# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

**FILED**

**MAR - 1 2016**

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of )
)
the F POD, CELL 12 at the Crawford County, Missouri Jail )   Case No. 4:16MJ07084 SPM
located at 212 Third Street, Steelville, Missouri 65565. )
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, __JAMES GADDY__, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

**the F POD, CELL 12 at the Crawford County, Missouri Jail located at 212 Third Street, Steelville, Missouri 65565,**

located in the __EASTERN__ District of __MISSOURI__, there is now concealed

see attached LIST.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
✓ evidence of a crime;
✓ contraband, fruits of crime, or other items illegally possessed;
✓ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C., §§ 1512(a)(1) and 1958 | Witness tampering; Conspiracy to commit murder-for-hire |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

✓ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's Signature*
JAMES GADDY, Task Force Officer
Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.
Date: __March 1, 2016__

_____
*Judge's signature*

City and State: __St. Louis, MO__   Hon. Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSAs:   THOMAS S. REA

## **LIST**

a. Any notes, papers, or other documents including, but not limited to, any medium that may contain contact information of individuals with whom WOODSON has been communicating during the course of the murder-for-hire conspiracy;

b. Any communication devices, including a cellular telephone(s) utilized by WOODSON for communication purposes during the course of the murder-for-hire conspiracy;

c. Photograph(s) of or other information identifying CW-3 or those related to or otherwise associated with CW-3;

d. Documentation of other information related to the murder of Byron Earts, Sr. that served as one motive for WOODSON's participation in the murder-for-hire plot;

e. Written communications, including letters, cards, or other documents possessed by WOODSON that related to the murder-for-hire conspiracy;

f. Any notes, papers, or other documents evidencing payment(s) made by WOODSON to UC-1 or payments made by other individuals to UC-1; and

g. Any and all other items related to the murder-for-hire conspiracy and/or the identities of those individuals participating in the murder-for-hire conspiracy.

## AFFIDAVIT IN SUPPORT OF
## FEDERAL SEARCH WARRANT

## INTRODUCTION

James Gaddy, being duly sworn, deposes and says that he is a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), duly appointed according to law and acting as such.

I am a TFO with the DEA and have been since 2010. I have been a deputized TFO with the DEA since January 2010 and am currently assigned to an Enforcement Group of the St. Louis Division Office. Prior to my DEA assignment, I was a sworn police officer with the St. Charles County Police Department and Breckenridge Hills Police Department for approximately 18 years. During the course of my law enforcement experience I have participated in numerous investigations involving controlled substances. I have conducted investigations of a variety of illegal drug-trafficking and money-laundering organizations. I have participated in investigations which led to the seizure of illegal drugs, weapons, and assets derived from the sale of illegal drugs, and the subsequent felony arrests of those individuals involved. I have participated in numerous drug-related training courses throughout my law enforcement career. I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts.

I am currently participating in an investigation regarding the illegal importation and distribution of narcotics by numerous individuals, including WOODSON. One of the principal parties in this organization is Adrian LEMONS ("LEMONS"). The investigation into the

1

organization, which for the purpose of the Affidavit shall be referred to LEMONS Criminal Enterprise, was begun by members of the FBI in February of 2014 and remains on-going.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to conduct a search of the target location, it does not set forth all of my knowledge regarding this matter.

This affidavit has been prepared as part of an application for a search warrant that seeks authorization to search the premises and seize evidence, fruits and instrumentalities of the commission of violations of Title 18, United States Code, Sections 1512(a)(1) and 1958, specifically, tampering with a witness and conspiracy to commit murder-for-hire, respectively.

More specifically, Maurice WOODSON has spearheaded a conspiracy in which he solicited an undercover police officer (UC-1) to murder a witness, referred to herein as CW-3. In order to carry out the murder-for-hire, WOODSON has communicated directly with UC-1, has solicited multiple individuals to assist him with communicating with UC-1, and has solicited multiple individuals to assist him in financing the murder-for-hire plot. Further, on or about February 26, 2016, WOODSON directed a female to make payment to UC-1 in exchange for UC-1 committing the murder of CW-3. Payment was, in fact, made.

During the murder-for-hire conspiracy, which remains on-going, WOODSON has been housed at the Crawford County, Missouri jail located at 212 Third Street, Steelville, Missouri 65565. WOODSON's inmate number is 45105-044. The United States Marshals Service has identified "F" POD, CELL 12, (F-12) as the jail cell utilized by WOODSON since January 21, 2016, and during the commission of the murder-for-hire conspiracy. *The F POD, CELL 12 at*

*the Crawford County, Missouri jail located at 212 Third Street, Steelville, Missouri 65565 is the target location to be searched ("target location").*

## RELIABILITY OF INFORMATION

This investigation has developed multiple cooperating witnesses, including the three cooperating witnesses described herein ("CW-2, CW-3, and CW-7") that have provided significant information relating to the facts contained herein.

1. <u>CW-2</u>: Regarding CW-2, law enforcement officials received detailed information beginning in the summer of 2015 from CW-2 concerning LEMONS' drug distribution operations. CW-2 is presently charged in a federal indictment and is offering assistance in the hopes of obtaining judicial consideration. CW-2 has provided information related to the drug distribution activities and related violent crimes of LEMONS and his associates. CW-2 has been determined to be reliable based upon physical surveillance, interviews of others sources and/or witnesses, the execution of search warrants, and the existing overall investigation. CW-2 has previously pled guilty to a drug distribution related felony offense in state court.

By way of summary only, CW-2 described his/her relationship with LEMONS during which time he/she purchased kilogram amounts of cocaine from LEMONS and personally observed LEMONS sell kilograms of cocaine to other subjects of this investigation. CW-2 identified 8546 Concord Place and 8573 North Broadway as locations where LEMONS provided cocaine to CW-2. CW-2 has also provided information about homicides conducted by Anthony JORDAN, aka "TT," and others. As referenced below, JORDAN is supplied cocaine by LEMONS. CW-2 also provided detailed information that JORDAN paid LEMONS to hire WOODSON and another to kill Byron EARTS, Sr.

3

2. <u>CW-3</u>: Regarding CW-3, law enforcement officials received detailed information beginning in January 2016 from CW-3 concerning LEMONS' drug distribution operations and related violence. CW-3 is cooperating in the hopes of obtaining judicial consideration. CW-3 has previously been convicted of multiple felony offenses, including at least one felony offense related to drug distribution. CW-3 also provided information that JORDAN and LEMONS hired WOODSON to kill Byron EARTS, Sr. CW-3 aided and abetted WOODSON in the murder.

The information CW-3 has provided has proved to be reliable based upon physical surveillance, interviews of others sources and/or witnesses, police reports, and electronic surveillance. By way of summary only, CW-3 described his/her relationship with LEMONS during which he/she purchased cocaine from LEMONS at 8546 Concord Place and 8573 North Broadway.

3. <u>CW-7</u>: CW-7 is a previously convicted felon seeking judicial consideration on a pending federal criminal felony charge. Investigators believe CW-7 is reliable to the extent that investigators have corroborated CW-7's information as to the existing murder plot via the investigation described herein.

Lastly, this affidavit contains information provided by confidential law enforcement sources. These sources may be referred to in the masculine form. This reference is for convenience, and is not necessarily an identification of the true gender of any source.

**THE FIRST SUPERSEDING INDICTMENT**

On January 7, 2016, 19 individuals, including WOODSON were federally indicted by a grand jury in the Eastern District of Missouri in two indictments, including a first superseding indictment in cause number S1-4:15CR 00404 HEA (NAB), in which 18 defendants were indicted on a total of twenty counts. In the indictment, WOODSON and others were charged

with a drug related homicide and violations of Title 18, United States Code, §§ 924(c) and (j) in relation to the murder of Bryon Earts, Sr. A total of 15 defendants, including WOODSON, have been indicted in Count Three of the indictment for conspiracy to distribute cocaine in violation of Title 21, United States Code, §§ 841(a)(1) and 846. WOODSON has also been indicted in Counts Eighteen and Twenty for possession with the intent to distribute cocaine base (crack) on or about April 30, 2015, and December 9, 2015, respectively. (Since that time, a second superseding indictment has been filed, but the charges against WOODSON remain the same.)

### THE MURDER OF BYRON EARTS, SR.

On December 5, 2013, Byron Earts, Sr., was shot multiple times and murdered at or near 3521 Kossuth in the City of St. Louis and the Eastern District of Missouri. Investigators recovered multiple .380 caliber cartridge cases at the scene. Based upon information received by a scene witness, homicide investigators caused a search of traffic cameras for a dark colored SUV that was described as fleeing the scene. Thereafter, investigators were able to retrieve a photo that placed a dark colored SUV bearing temporary license "003PKU." On December 9, 2013, investigators began to look for the SUV.

On December 10, 2013, SLMPD officers located the vehicle, a black 2007 GMC Denali, at or near 4615 Alaska, within the City of St. Louis. Members of the Anti-Crime Unit of the SLMPD observed WOODSON enter the driver's seat of the vehicle. Thereafter, officers detained the vehicle at or near 415 Bates and determined WOODSON to be the driver. There were no other occupants in the vehicle. It was determined that the vehicle was reported stolen from Kansas City, MO.

Investigators advised WOODSON of his Miranda rights and he stated words to the effect that he knew the vehicle was stolen. WOODSON admitted to homicide investigators that he

5

possessed the vehicle for approximately a month and that he obtained the vehicle by trading crack rocks to "Ole G," in exchange for the vehicle. WOODSON admitted to being a drug dealer but denied knowledge of the murder of Byron Earts, Sr.

During the course of this on-going investigation, information was developed from CW-2 that an individual identified as Adrian LEMONS supplied large quantities of cocaine to an individual named Anthony JORDAN, a/k/a "T.T." and that JORDAN requested that LEMONS facilitate the murder of Byron Earts, Sr. CW-2 explained that JORDAN that believed that Earts was prepared to support subjects from a rival drug distribution faction in a violent dispute. CW-2 provided information which identified WOODSON as the shooter hired by LEMONS on behalf of JORDAN. CW-2 explained that historically, LEMONS sold cocaine base (crack) to WOODSON. Investigators have recovered a photograph of the Earts murder scene on one of JORDAN's telephone which investigators believe was downloaded from a media source.

CW-3 provided information regarding the murder, which included the following: CW-3 advised investigators that JORDAN solicited LEMONS to hire WOODSON to kill Byron Earts, Sr. CW-3 stated that WOODSON did in fact kill Byron Earts, Sr., and LEMONS paid WOODSON for the murder. CW-3 stated that CW-3 aided and abetted WOODSON in the murder of Earts, Sr.

**THE MURDER-FOR-HIRE PLOT**

During the week of February 1, 2016, investigators met with CW-7 regarding a potential murder-for-hire. CW-7 indicated to investigators that he/she is currently incarcerated on felony charges unrelated to this particular investigation. CW-7 further explained that he/she is incarcerated with a childhood friend, WOODSON a/k/a "Blue." CW-7 stated prior to meeting with investigators, WOODSON and CW-7 engaged in a conversation in regards to each other's

6

pending charges, specifically WOODSON's murder charge. CW-7 advised during this conversation, WOODSON indicated he (WOODSON) was "good" for the murder and was confident he (WOODSON) knew who cooperated with law enforcement concerning the murder WOODSON was involved with. WOODSON further confided with CW-7 regarding the identity of the cooperating witness, whom WOODSON identified as the person known to investigators as CW-3. CW-7 stated WOODSON indicated that CW-3 has a "hit" on his/her person. Investigators believe the term "hit" is a reference to the planned murder of CW-3 to prevent CW-3 from testifying against WOODSON. WOODSON asked CW-7 if he/she knew of a person willing to carrying out the "hit" on CW-3. CW-7 told WOODSON he/she would think about it at which time WOODSON told CW-7, "not to wait too long."

Armed with the above information, investigators provided CW-7 with a Missouri-based cellular telephone number (636) 328-5705 (hereinafter: the UC Phone), which is utilized by undercover investigators. Investigators directed CW-7 upon returning to the detention facility, to provide WOODSON with the number to the UC Phone, in order to make contact with the fictitious "hit man," who will be working in the capacity of an undercover investigator ("UC-1").

By way of brief summary only, on multiple occasions spanning approximately February 10, 2016, to March 1, 2016, WOODSON and/or individuals assisting WOODSON had direct communications with UC-1. Among other things, it was discussed with UC-1 in coded terminology WOODSON's desire for UC-1 to murder CW-3; UC-1 being willing and ready to murder CW-3; and UC-1's need for payment in order to conduct the murder -- all to which WOODSON acknowledged and agreed. (Many, if not all of these communications, were recorded by the Crawford County, Missouri jail communication recording system.)

On February 26, 2016, a female assisting WOODSON with the murder-for-hire conspiracy met with UC-1, in person, and provided UC-1 with United States currency which represented payment on WOODSON's behalf in exchange for the murder of CW-3. At that time, UC-1 displayed at least one photograph of CW-3 to the female. The female acknowledged that the photograph was of the target of the murder, that is, CW-3. On February 29, 2016, the same female and UC-1 met in person. During the course of that meeting, UC-1 confirmed that he had in fact, carried out the murder of CW-3. On March 1, 2016, WOODSON, by way of a "three-way" telephone call, contacted UC-1 to confirm that the murder of CW-3 had occurred.

Based upon my education, training, and experience investigating criminal offenses, including but not limited to, conspiracy to commit murder-for-hire, and the information gathered by the investigative team during the course of this on-going, active investigation, I believe the following information may be located inside the target location jail cell utilized by WOODSON:

a. Any notes, papers, or other documents including, but not limited to, any medium that may contain contact information of individuals with whom WOODSON has been communicating during the course of the murder-for-hire conspiracy;

b. Any communication devices, including a cellular telephone(s), utilized by WOODSON for communication purposes during the course of the murder-for-hire conspiracy;

c. Photograph(s) of or other information identifying CW-3 or those related to or otherwise associated with CW-3;

d. Documentation of other information related to the murder of Byron Earts, Sr. that served as one motive for WOODSON's participation in the murder-for-hire plot;

e. Written communications, including letters, cards, or other documents possessed by WOODSON that related to the murder-for-hire conspiracy;

  f.  Any notes, papers, or other documents evidencing payment(s) made by WOODSON to UC-1 or payments made by other individuals to UC-1;

  g.  Any and all other items related to the murder-for-hire conspiracy and/or the identities of those individuals participating in the murder-for-hire conspiracy.

  Based upon the information received from the cooperating witness(es) and developed during the course of this on-going investigation, it is firmly believed that, among other things, evidence consistent with violations of Title 18, United States Code, Sections 1512(a)(1) and 1958 will be found at the target location.

  Due to the ongoing nature of the investigation and the risk of harm to the investigating officer(s) and cooperating witness, I request that this affidavit in support of the search warrant be sealed until further notice from the Court.